UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-183-GWU

KRISTY L. GRAY, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

 4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

 5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

 Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance

on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Kristy L. Gray, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of right reflex sympathetic dystrophy (RSD). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 18-24). The Appeals Council declined to review, and this action followed.

At the administrative hearing on May 7, 2008, the ALJ asked the VE whether a person of the plaintiff's age of 33, two years of college education, and past work experience could perform any jobs if she were capable of lifting 20 pounds occasionally and 10 pounds frequently (although she would be limited to lifting, pushing, and pulling no more than 5 to 10 pounds with the right upper extremity), could stand and walk six hours in an eight-hour day, and sit six hours in an eight-hour day, and also had the following non-exertional restrictions. She: (1) could not climb ladders, ropes, and scaffolds; (2) could occasionally stoop; (3) could frequently climb ramps and stairs, kneel, crouch, and crawl; and (4) could

occasionally reach overhead with the right upper extremity and handle objects "to no more than the shoulder level . . . more in the nature of steadying loads, no limits." (Tr. 57-8). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 59-60).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability beginning October 25, 2005 due to RSD in the right arm which caused her difficulty with movement above shoulder height, repetitive pushing and pulling, and numbness in the fingers. (Tr. 117). She also stated that she could not sit or stand for longer than two hours at a time. (Id.). At the administrative hearing, she testified that the RSD had spread from her right upper extremity to the entire right side of her body, including her face and right foot. (Tr. 37). She was on a variety of medications, including Lortab, Neurontin, and Topomax, which caused difficulty with concentration, and confusion at times. (Tr. 40). However, she was able to take 12 hours of college course work with some help in taking notes in class and the use of a device that let her dictate into her computer. (Tr. 41-2). She also attended church at least one time a week and did some household chores. (Tr. 48-53).

As an initial matter, the plaintiff and defendant are in disagreement regarding a potentially crucial letter written by the plaintiff's treating physician, Dr. Saroj Dubal, a specialist in pain management. The letter is dated July 17, 2008, some five days before the ALJ issued his decision, and is included in the court transcript as Exhibit 20F. The physician states that Mrs. Gray had a "complex regional pain syndrome" affecting the right upper extremity, which had spread to the right upper thoracic area and right lower extremity. (Tr. 456). The chronic pain syndrome had resulted in anxiety and insomnia and was unlikely to improve or resolve. The medication she required had potential side effects such as sedation and drowsiness which would limit her function. The condition would limit her physical activity "particularly involving the upper extremities" and also cause some limitation in the lower extremities. Dr. Dubal opined that it would be difficult to find an employer who would accommodate all of the limitations or would allow her to work with her current medications. For these reasons, he felt that she was unable to work. (Id.).

This letter was not mentioned by the ALJ in his decision, and since it appears to implicate restrictions with the plaintiff's right lower extremity and to support her allegations of walking and standing limitations, as well as to support her claims of medication side effects, it would clearly be relevant in the decision-making process. As the Sixth Circuit has held, a complete failure to mention a treating source's restrictions violates the terms of the Commissioner's regulations at 20 C.F.R. §

404.1527(d)(2), which assures claimants that the Social Security Administration "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Bowen v. Commissioner of Social Security, 478 F.3d 742, 747 (6th Cir. 2007).

The Commissioner points out, however, that the Appeals Council listed the report as new evidence (Tr. 4), meaning that it was not available to the ALJ, and cannot be used as part of the court's substantial evidence review. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993). The issue is somewhat muddled by the fact that the Appeals Council apparently also considered as new evidence a report from Dr. Donald R. Douglas dated October 11, 2007 (Tr. 4, 453-5), although this report clearly was part of the evidence before the ALJ (Tr. 367-9). Additionally, these two pieces of evidence were sequentially numbered as Exhibits 19F and 20F, rather than being given the "AC" prefix which the defendant has used for many years in preparing transcripts for evidence which was initially submitted to the Appeals Council.

Assuming without deciding that the defendant is correct and that Dr. Dubal's July 17, 2008 letter was not available to the ALJ, a remand is still required because the ALJ apparently failed to take into account the findings of Dr. Douglas in the October 11, 2007 report. Dr. Douglas, an associate of Dr. Dubal, had performed an independent medical examination of Mrs. Gray on June 6, 2006. (Tr. 231, 260).

At that time he had listed a diagnostic impression of chronic radial pain syndrome of the right hand and forearm, a right rotator cuff tear "status post labral repair by Dr. Ben Kibler," and residual right shoulder tendinitis with some right hand tendinitis. (Tr. 232, 261). The ALJ noted that Dr. Douglas provided a whole body impairment rating of 9 percent with an additional 2 percent for pain and RSD, stated that he found this assessment to be supported by the objective medical evidence, and stated it would be given "significant weight." (Tr. 20). However, the ALJ did not mention the additional information that Dr. Douglas had written that "apparently Dr. [W. Ben] Kibler is giving a rating for the shoulder region and I will be happy to give a rating for the right upper extremity, especially the hand and wrist." (Tr. 232, 261). Although there are documents from Dr. Kibler reflecting some treatment and an operation for a torn labrum of the right shoulder (Tr. 230, 239), the reports do not contain an impairment rating.

However, the October 11, 2007 report from Dr. Douglas, which was contained both in Exhibit 18F as well as in Exhibit 19F submitted to the Appeals Council, contains Dr. Douglas's conclusion (consistent with Dr. Dubal) that the plaintiff's chronic regional pain syndrome had spread from her right upper extremity into her right side and right lower extremity. (Tr. 368). Although the report is not worded as clearly as it might be, Dr. Douglas does state, after reviewing medical reports from Dr. Kibler and performing his own examination, that Mrs. Gray "already

11

has at least a 21 percent impairment," presumably from Dr. Kibler, and that he found an additional 9 percent impairment "on top of her already existing impairment for her right lower extremity chronic regional pain syndrome which seemed to have spread from the upper extremity." (Id.).  Therefore, Dr. Douglas was assessing a 30 percent impairment.  It is difficult to explain the ALJ's statement that he gave significant weight to the physician's prior opinion reflecting only a 9 percent impairment, unless the more recent report was simply overlooked.

Moreover, the specific restrictions found by the ALJ were based on a physical residual functional capacity assessment prepared by a state agency reviewing source, Dr. P. Saranga, on January 12, 2007. (Tr. 335-41).  Dr. Saranga clearly did not have the benefit of a review of the subsequent report by Dr. Douglas in October, 2007.

Although the disability percentage ratings used by the American Medical Association are not strictly comparable to the specific functional limitations required in a Social Security disability case, Social Security Ruling (SSR) 06-03p provides that the evidence used to make decisions regarding disability by another agency, such as Worker's Compensation for an insurance company, "may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules."  It goes on to state

that the opinion evidence from medical sources will be evaluated in accordance with Social Security regulations and rulings.  Id. at 7.

Given the dramatic difference between the two impairment ratings given in the reports of Dr. Douglas, and the clear instructions in SSR 06-03p, a remand will be required for further consideration of these factors.  At the same time, any new evidence, such as the contested report from Dr. Dubal at Exhibit 20F, may also be considered.  A consistent order and judgment will enter this day.

This the 1st day of February, 2011.

**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**